LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1188
*Attorneys for Plaintiff, FLSA*
*Collective Plaintiffs, and the Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIGUEL ANGEL BALSECA and RICARDO FABIAN, *on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>MANHATTAN PARKING GROUP LLC, MANHATTAN PARKING SYSTEMS GARAGE CORP., METROPOLITAN PARKING GROUP LLC, MEYERS PARKING, INC., MP LINCOLN GARAGE LLC, MP GOTHAM GARAGE LLC, ALLAN GORDON, and JOHN DOE ENTITIES 1-100,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs MIGUEL ANGEL BALSECA and RICARDO FABIAN, ("Plaintiffs"), on behalf

of themselves and all others similarly situated, by and through their undersigned attorneys, hereby

files this Class and Collective Action Complaint against Defendants MANHATTAN PARKING

GROUP LLC ("MPG"), MANHATTAN PARKING SYSTEMS GARAGE CORP. ("MPS"),

METROPOLITAN PARKING GROUP LLC ("METROPOLITAN"), MEYERS PARKING,

INC. ("MEYERS"), MP LINCOLN GARAGE LLC ("MP LINCOLN"), MP GOTHAM

GARAGE LLC ("MP GOTHAM"), Allan Gordon ("GORDON"), and JOHN DOE ENTITIES 1-100 ("JOHN DOES") (MPG, MP SYSTEMS, METROPOLITAN, MEYERS, MP LINCOLN, MP GOTHAM, and JOHN DOES collectively referred to herein as "Corporate Defendants"; GORDON referred to herein as "Individual Defendant"; Corporate Defendants and Individual Defendant collectively referred to herein as "Defendants"), and state as follows:

## INTRODUCTION

1.      Plaintiffs allege that, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§201 et. seq. ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving, (2) liquidated damages, and (3) attorney's fees and costs.

2.      Plaintiffs further allege, pursuant to the New York Labor Law ("NYLL"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving, (2) unpaid wages due to failing to pay spread of hours premiums, (3) statutory penalties, (4) liquidated damages, and (5) attorney's fees and costs.

3.      Defendants own or operate over 100 parking facilities throughout the New York City area.  Plaintiffs and others similarly situated worked for Defendants as parking attendants, washers, cashiers, and other laborers.  Plaintiffs and others similarly situated regularly worked in excess of 40 hours per week for Defendants, but were not compensated properly for all of the hours they worked, or for their overtime hours.

## JURISDICTION, AND VENUE

4.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

5.    Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 as Defendants are headquartered in this District and, therefore, the events, witnesses, policies, and procedures giving rise to the Complaint emanated from this District.

6.    This Court has personal jurisdiction over the Individual Defendant in that they are citizens and residents of the State of New York.

7.    This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b), because one or more Defendants reside in this district and the events giving rise to Plaintiffs' claims occurred herein.

## PARTIES

8.    Plaintiff BALSECA is a resident of the State of New Jersey.

9.    Plaintiff FABIAN is a resident of the State of New York, New York County.

10.    At all times relevant herein, Defendant MANHATTAN PARKING GROUP LLC was and is a domestic limited-liability company duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at 545 Fifth Avenue, Suite 600, New York, New York ("Fifth Avenue Office") and an adress for service of process located at c/o Corporation Service Company, 80 State Street, Albany, NY 12207.

11.    At all times relevant herein, Defendant MANHATTAN PARKING SYSTEMS GARAGE CORP. was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at the Fifth Avenue Office and an adress for service of process located at c/o Corporation Service Company, 80 State Street, Albany, NY 12207.

12.    At all times relevant herein, Defendant METROPOLITAN PARKING GROUP LLC was and is a domestic limited-liability company duly organized under and existing by virtue

of the laws of the State of New York, and having its principal place of business and address for service of process located at the Fifth Avenue Office.

13.    At all times relevant herein, Defendant MEYERS PARKING, INC. was and is a foreign business corporation duly organized under and existing by virtue of the laws of the State of Delaware, and having its principal place of business located at the Fifth Avenue Office and address for service of process located at c/o Corporation Service Company, 80 State Street, Albany, NY 12207.

14.    At all times relevant herein, Defendant MP LINCOLN GARAGE LLC was and is a domestic limited-liability company duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business and address for service of process located at the Fifth Avenue Office.

15.    At all times relevant herein, Defendant MP GOTHAM GARAGE LLC was and is a domestic limited-liability company duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business and address for service of process located at the Fifth Avenue Office.

16.    At all times relevant herein, the Defendant John Does are business entities of unknown citizenship, which upon information and belief have their principal places of business at the Fifth Avenue Office.

17.    The John Does are other business entities affiliated with Defendants' enterprise, the exact number and identies of which are not presently known.  A list of potential John Doe entities and their current locations of operartions is located on the MPG's website[1] and is annexed hereto as **Exhibit A**.  The John Does include specifically, but without limitation, all entities listed in

---

[1] https://mpgparking.com/locations (last accessed June 25, 2024).

connection with the locations on **Exhibit A**.

18.     All of the Corporate Defendants' locations including specifically, but without limitation, all of the locations listed in **Exhibit A**, are operated as a single enterprise.  All such locations are engaged in related activities, share common ownership and/or management, and have a common business purpose.  The Corporate Defendants' employees move interchangeably from location to location as needed, and use stationery and equipment bearing Defendants MPG and/or MPS's name and logo.  The Corporate Defendants provide the same terms of employment to employees at all locations pursuant to their collective bargaining agreement ("CBA") with Garage Employees Union Local 272 ("Union").

19.     Plaintiff BALSECA was used interchangeably among Defendants' corporate entities and locations.  Plaintiff BALSECA was moved from a position at 323-345 West 34th Street to other garages of Defendants MPG and/or MPS despite being paid under the nominal employment of MP LINCOLN, regardless of location of work.

20.     Plaintiff RICARDO FABIAN was used interchangeably among Defendants corporate entities and locations.  Plaintiff RICARDO FABIAN was moved from a position at 9 West 35th Street, New York, NY under the nominal employment of MP GOTHAM to a position located at 323-345 West 34th Street, New York, NY under the nominal employment of MP LINCOLN.  Both Plaintiffs applied directly to Defendant MEYERS, and were then stationed, at Defendants MPG and/or MPS's discretion, at Defendants MPG and/or MPS's various affliated locations and entities.

21.     Additionally, employees may apply directly to Defendants MPG and/or MPS which operate Defendants' centralized human resources department, and will then assign employees to Defendants' parking garages on an as needed basis. *See* **Exhibit B**, Defendants MPG and/or MPS's Application.

22.    The CBA contains an arbitration agreement, but the provision makes no explicit reference to arbitrating charges arising under the FLSA or NYLL. Thus the CBA does not manifest a clear and unmistakable waiver by Union members of their rights to bring statutory claims in court.

23.    The Corporate Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the Corporate Defendants transact with customers and vendors located outside of New York and employees of the Corporate Defendants handle goods and materials produced outside of New York (including vehicles, tools, cleaning supplies, and other items) that have moved in interstate commerce, and the Corporate Defendants are thus employers subject to the jurisdiction of the FLSA.

24.    Defendant GORDON would appear at the parking garages and would inspect the facility and instuct employees. Defendant GORDON determined compensation and personally distributed Christmas bonuses to employees such as Plaintiff BALSECA. At all times relevant herein, Defendant GORDON was and is a citizen and resident of the State of New York. Defendant GORDON is identified as the Chairman of Defendant MEYERS.

## DEFENDANTS ARE JOINT EMPLOYERS AND PART OF A SINGLE INTEGRATED ENTERPRISE

25.    At all times relevant herein, the Corporate Defendants were and are parents, subsidiaries, or otherwise affiliated with each other.

26.    The Corporate Defendants are a unified operation and joint enterprise in which all of the activities of the Corporate Defendants and other entities are related to each other.

27.    The Corporate Defendants are all operated as a single business unit or economic entity. As a matter of economic reality there is no differentiation between the individual Corporate

Defendants and the enterprise as a whole.

28.     The Corporate Defendants share common ownership, management, and control.

29.     The Corporate Defendants are all operated out of the same location, namely the Fifth Avenue Office, and share the same phone number.

30.     The Corporate Defendants share employees, administrative personnel, equipment, assets, liabilities, profits, and expenses.

31.     Throughout their employment with Defendants, the entity from which Plaintiffs received their pay intermittently varied among the Corporate Defendants including specifically, but without, limitation MP LINCOLN and MP GOTHAM.  Each of the paystubs Plaintiffs received from these various entities identified such entity's office as the Fifth Avenue Office, and provided the same phone number for each such entity.  No matter which entity was named on their paystub, Plaintiffs were always paid out of the same Chase bank account.

32.     The Corporate Defendants implemented the same or similar timekeeping and payroll policies complained of herein throughout the common enterprise.

33.     At all times relevant herein, the Corporate Defendants were and are controlled by the Individual Defendant.

34.     In his capacities as owner, shareholder, member, officer, director, manager, and/or supervisor of the Corporate Defendants, the Individual Defendant have at all times relevant herein exercised operational control over the Corporate Defendants and the terms and conditions of the employment of Plaintiffs and all others similarly situated.

35.     Specifically, with respect to Plaintiffs and other employees, the Individual Defendant had the power and authority to (i) hire and fire employees, (ii) set their work schedules, (iii) determine their rates and methods of pay, (iv) maintain employment records, and (v) otherwise

affect the quality, terms, and conditions of their employment.

36.     At all times relevant herein, the Individual Defendant exercised functional control over the business and financial operations of the Corporate Defendants, and had authority over all employee-related decisions, including specifically but without limitations payroll, personnel, and wage and hour policies concerning Plaintiffs and all others similarly situated.

37.     At all times relevant herein, the Individual Defendant had the power to direct, restrict, regulate, govern, and/or administer the activities of the Corporate Defendants.

38.     At all relevant times the Individual Defendant and the Corporate Defendants were joint employers of Plaintiffs and others similarly situated as a matter of economic reality, and as a result, all of the Defendants are jointly and severally liable for all claims made herein.

## FLSA COLLECTIVE ACTION ALLEGATIONS

39.     Plaintiffs bring this action as a collective action pursuant to Section 16(b) of the FLSA on behalf of themselves and all other parking attendants, washers, cashiers, and other non-exempt laborers employed by Defendants on or after the date that is six years before the filing of the initial Complaint in this case ("FLSA Collective Plaintiffs").

40.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper regular and overtime wages for their off-the-clock work.  The FLSA claims of Plaintiffs as stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

41.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA.  The FLSA Collective Plaintiffs are

readily ascertainable.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## CLASS ACTION ALLEGATIONS

42.    Plaintiffs bring claims for relief under the NYLL pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other parking attendants, washers, cashiers, and other non-exempt laborers employed by Defendants on or after the date that is six years before the filing of the initial Complaint in this case ("Class Period").

43.    All said persons, including Plaintiffs, are referred to herein as the "Class."  The members of the Class are readily ascertainable.  The number and identity of the members of the Class are determinable from Defendants' records.  The hours assigned and worked, the positions held, and rates of pay for each Class member are also determinable from Defendants' records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Rule 23.

44.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  Although the precise number of such persons is unknown, as the facts on which the calculation of that number would be based are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

45.    Plaintiffs' NYLL claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions.  All the Class members were subject to the same corporate practices of Defendants (i) failing to pay spread-of-hours wages for work days in which Class

9

members worked greater than 10 hours; (ii) failing to pay proper wages for off-the-clock work; and (iii) failing to provide proper wage notices and statements that were in compliance with the requirements under the NYLL.  Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member.  Plaintiffs sustained similar losses, injuries, and damages as other Class members, wth such injuries and damages arising from the same unlawful policies, practices, and procedures.

46.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

47.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, while treating the claims as a class action would result

in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

48.    When wage and hour violations arise, current and former employees are often afraid to assert their rights.  Current employees fear direct or indirect retaliation by their employers, while former employees are fearful of damage to their current or future employment.    Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

49.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a.  Whether Defendants employed Plaintiffs and other Class members within the meaning of the NYLL;

    b.  What are and were Defendants' policies and procedures regarding the types of work and labor for which Defendants did not pay the Class members properly;

    c.  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the Class members for their work;

    d.  Whether Defendants properly notified Plaintiffs and other Class members of their hourly rate and overtime rate;

    e.  Whether Defendants provided proper wage statements and wage and hour notices

11

to Plaintiffs and other Class members per requirements of the NYLL;

f.    Whether Defendants properly paid Plaintiffs and other Class members spread-of-hours compensation per the requirements of the NYLL; and

g.    Whether Defendant properly compensated Plaintiffs and other Class members for all hours worked under the NYLL.

## JURY DEMAND

50.    Plaintiffs demands a trial by jury of all issues so triable in this action.

## STATEMENT OF FACTS

51.    Defendants own and/or operate over 100 parking facilities throughout the New York City area.

52.    In or around November 2006, Plaintiff BALSECA applied directly to Defendant MEYERS, was hired as a parking attendant, and was then stationed, at Defendants MPG and/or MPS's discretion, at Defendants MPG and/or MPS's various affliated locations and entities. For the most part, Plaintiff BALSECA primarily worked at the parking garage located at 323-345 West 34th Street, New York, NY under the nominal employment of MP LINCOLN. Plaintiff BALSECA continues to work for Defendants as a parking attendant as of the filing of this Complaint.

53.    In or around April 2020, Plaintiff FABIAN applied directly to Defendant MEYERS, was hired as a parking attendant, and was then stationed, at Defendants MPG and/or MPS's discretion, at Defendants MPG and/or MPS's various affliated locations and entities. Plaintiff FABIAN was used interchangeably among Defendants' corporate entities and locations. Prior to July 2020, Plaintiff FABIAN primarily worked as a parking attendant at 9 West 35th Street, New York, NY under the nominal employment of MP GOTHAM. After July 2020, Defendants MPG and/or MPS moved Plaintiff FABIAN's primary location of work to 323-345 West 34th Street,

New York, NY under the nominal employment of MP LINCOLN.  Plaintiff FABIAN's work for Defendants continued until April 2021.

54.     While employed by Defendants, Plaintiff BALSECA was scheduled to work five (5) days a week, eight (8) hours each day, for exactly forty (40) hours of work each week. Throughout Plaintiff BALSECA's employment Plaintiff BALSECA was only paid for this schedule despite working hours beyond his schedule each week.  As an example, with almost no exception for the entirety of the year of 2021, Plaintiff BALSECA was compensated *exactly* 40 hours for each week worked. *See* **Exhibit C** (Plaintiff BALSECA's Paystubs).

55.     While employed by Defendants, Plaintiff FABIAN was scheduled to work five (5) days a week, eight (8) hours each day, for exactly forty (40) hours of work each week.  Throughout Plaintiff FABIAN's employment, Plaintiff FABIAN was only paid for this schedule despite working hours beyond his schedule each week.

56.     Plaintiffs used clock machines to clocked-in and out.  These clock records demonstrate work hours greater than what they were compensated each day and week.  As Plaintiffs were compensated for exactly forty (40) hours each week, these uncompensated hours were overtime hours.  Plaintiffs worked an additional half (0.5) hour each day, and are underpaid two-and-one-half (2.5) overtime hours each week.  FLSA Collective Plaintiffs and Class members worked hours more than their schedules, including overtime hours, but were only paid for their scheduled time. FLSA Collective Plaintiffs and Class members were similarly underpaid by a half (.5) hour each for each day of work.

57.     Additionally, Defendants' timekeeping and payroll policies functioned to reduce the paid hours of Plaintiffs and others similarly situated in violation of the FLSA and NYLL.

58.     If Plaintiffs or others similarly situated clocked in more than 10 minutes late for

their scheduled shift, they would not be paid for their first hour of their scheduled shift.  For example, if Plaintiffs were scheduled to work 8:00 A.M. to 4:00 P.M. but clocked into work at 8:11 A.M. that morning, he would only be paid for the hours he worked between 9:00 A.M. and 4:00 P.M. that day.

59.    In addition to not receiving compensation for all hours of work, Defendants had a policy which permitted managers to collect and retain approximately 50% of the tips received from clients for parking attendants work.  The managerial employees included in the tip pool included manager Hipolito Zarzuela.  Plaintiff BALSECA confirmed with clients that they were leaving more in tips than Plaintiff BALSECA received.  Plaintiff BALSECA also had the policy confirmed when he complained to Human Resources about the tip-retention and was informed that Defendants permitted managers to receive tips.

60.    Managers' duties did not have them regularly working as parking attendants.  Less than 10% of a manager's day was spent engaged in parking attendant duties.  Consequently, managers' retention of 50% of the tips was without justification and against the FLSA and NYLL.

61.    Multiple times a year, as will be reflected in Plaintiffs' clock-in records, Plaintiffs experienced workdays lasting over ten (10), but as Plaintiffs' paystubs demonstrate, they and others similarly situated never received spread-of-hours compensation as required under the NYLL.

62.    As Plaintiffs and others similarly situated routinely worked at or over 40 hours per week, these unlawful reductions in paid time served to deprive Plaintiffs and others similarly situated of proper overtime pay as required under the FLSA and NYLL.

63.    As Plaintiffs and others similarly situated were at all relevant times paid at or near the NYLL minimum wage, these deductions served to reduce the average hourly wage of Plaintiffs

and others similarly situated to below the applicable NYLL minimum wage.

***Plaintiffs' and Class Members' Wage Statement and Notice Claims***:

64.     Defendants never provided Plaintiffs and Class members with wages notices at hiring, as required by New York Lab. Law § 195(1).

65.     Plaintiffs and Class members likewise did not receive proper wage statements from Defendants, as required under NYLL. The checks and/or cash payments that were disbursed to Plaintiffs and Class members were accompanied by nothing more than the amount paid to Plaintiffs, the form of payment, and the week the payment was for. The payments do not include any information related to regular and overtime rates of pay, regular and overtime hours worked, gross wages, deductions, allowances, and net wages as required by New York Lab. Law § 195(3).

66.     Therefore, Defendants directly violated the Wage Theft Protection Act ("WTPA") – incorporated in the NYLL – when Defendants knowingly and willfully operated their business with a policy of not providing wage notices and proper wage statements to Plaintiffs and Class members.

67.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately

deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

68.   Had Defendants provided Plaintiffs and Class members with wage statements containing a detailed breakdown of Plaintiffs' regular and overtime hours and listing Plaintiffs' regular and overtime rates, as required under NYLL § 195(3), it would have been self-evident that Plaintiffs were being underpaid.

69.    Faced with this undeniable proof of their unlawful wage practices, Defendants would have had to either (a) increase Plaintiffs' wages to the legally required amount or (b) forthrightly acknowledge, by way of the wage statement, that Plaintiffs were underpaid, which would readily inculpate Defendants in court. Either possibility would have allowed Plaintiffs to more effectively vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

70.   The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiffs and Class members. This delayed payment caused Plaintiffs and Class members to struggle to pay bills and other debts.

71.   Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

72.   Because Defendants did not produce proper wage statements containing the actual wages to which Plaintiffs were entitled (and the proper deductions), Defendants could not report to the IRS and Social Security Administration, through proper W-2s, Plaintiffs' proper earnings for the year, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial

District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[2]

73.      The effect of not reporting or underreporting wages on an employees' W-2 was, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

74.      "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar.

---

[2] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:   "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

75.    Here, it is clear that Defendants' failure to provide Plaintiffs and Class members with proper wage statements entailed "concrete, downstream consequences" involving monetary injury, because the direct effect was to reduce Plaintiffs and Class members' entitlement to social security.

76.    Courts agree that the misreporting of earnings constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

77.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiffs and other employees, rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*.

Plaintiffs and Class members lost benefits by virtue of how Defendants reported, or failed to report, their income, which was in turn caused by the absence of legally compliant wage statements. That is why "Plaintiff[] [has] standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

78.     Whether or not any Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

79.     Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiffs were irreversibly injured with respect to his social security benefits as soon as Defendants either failed to send a W-2 to the IRS or sent a W-2 that underreported Plaintiffs' true earnings. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)). In either case, this was the result of Defendants' failure to issue legally compliant wage statements.

80.     Defendants failed to properly record the unpaid time Plaintiffs and others similarly situated worked, and thereby failed to make and keep accurate payroll records and provided Plaintiffs and others similarly situated with fraudulent wage statements in violation of the FLSA and NYLL.

81.     Defendants were or should have been aware of their statutory requirements as employers, including specifically but without limitation the requirements under the FLSA and NYLL to pay Plaintiffs and others similarly situated for all of the time they worked, to pay spread-of-hours compensation when Plaintiffs and others similarly situated worked in excess of 10 hours per day, and to make and preserve proper payroll records.

19

82.    However, Defendants knowingly failed to pay Plaintiffs and others similarly situated all of the regular and overtime wages to which they were entitled, and to make and preserve proper payroll records.

83.    As such, the various violations of the FLSA and NYLL alleged herein were committed knowingly, willfully, and intentionally by Defendants.

84.    Furthermore, these violations are ongoing, as Defendants continue to engage in the wrongful conduct described herein.

## FIRST CAUSE OF ACTION
### (FLSA Collective Action)

85.    Plaintiffs repeat each and every previous allegation as if fully set forth herein.

86.    At all relevant times Plaintiffs and the other FLSA Collective Plaintiffs were employees of the Corporate Defendants within the meaning of the FLSA, and were persons covered by and intended to benefit from the provisions of the FLSA.

87.    At all relevant times the Corporate Defendants as a joint enterprise were an employer within the meaning of the FLSA.

88.    At all relevant times the Corporate Defendants and the Individual Defendants were joint employers of Plaintiffs and the other FLSA Collective Plaintiffs.

89.    As alleged herein, Plaintiffs and the other FLSA Collective Plaintiffs regularly worked regular and overtime hours for Defendants for which they were not paid, in violation of the FLSA.

90.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and the other FLSA Collective Plaintiffs for all of the hours they worked, including overtime hours, when Defendants knew or should have known such was due.

20

91.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and the other FLSA Collective Plaintiffs suffered damages in the form of unpaid regular and overtime wages.  Plaintiffs and the other FLSA Collective Plaintiffs seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the FLSA.

## SECOND CAUSE OF ACTION
### (NYLL Class Action)

92.    Plaintiffs repeat each and every previous allegation as if fully set forth herein.

93.    At all relevant times Plaintiffs and the other Class members were employees of the Corporate Defendants within the meaning of the NYLL, and were persons covered by and intended to benefit from the provisions of the NYLL.

94.    At all relevant times the Corporate Defendants as a joint enterprise were an employer within the meaning of the NYLL.

95.    At all relevant times the Corporate Defendants and the Individual Defendant were joint employers of Plaintiffs and the other Class members.

96.    As alleged herein, Plaintiffs and the other Class members regularly worked in excess of 10 hours per day and 40 hours per week, but were not paid all of the wages to which they were entitled under the NYLL, including minimum-wage, overtime, and spread-of-hours wages.

97.    Defendants also failed to provide Plaintiffs and the other Class members with accurate wage statements, as required under the NYLL.

98.    Defendants knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to compensate Plaintiffs and the other Class members for all of the hours they worked, including overtime hours, when Defendants knew or should have known such was due, and their failure to provide Plaintiffs and the other Class members with accurate

wage statements.

99.     As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiffs and the other Class members suffered damages in the form of unpaid regular and overtime wages.  Plaintiffs and the other Class members seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the NYLL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court assume jurisdiction herein and thereafter grant the following relief:

a.  Designation of Plaintiffs as representative of the FLSA Collective Plaintiffs;

b.  Designation of this action as a class action pursuant to Rule 23;

c.  Designation of Plaintiffs as representative of the Class;

d.  Declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.  Injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawfl practices, policies and patterns set forth herein;

f.  Compensatory damages in an amount to be determined at trial, including unpaid regular, minimum-wage, spread-of-hours, and overtime wages;

g.  Liquidated damages pursuant to the FLSA and NYLL;

h.  Pre- and post-judgment interest; and

i.  Plaintiffs' costs and reasonable attorney's fees;

Together with such other and further relief as the Court deems just and proper.

Dated: July 31, 2024
      New York, New York

                              LEE LITIGATION GROUP, PLLC

                By:      */s/ C.K. Lee*
                     C.K. Lee (CL 4086)
                     Anne Seelig (AS 3976)
                     148 West 24th Street, 8th Floor
                     New York, NY 10011
                     (212) 465-1188
                     *Attorneys for Plaintiff, FLSA Collective Plaintiffs,*
                     *and the Class*